[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-15754
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cr-20332-RNS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID RAPHAEL CONCEPCION,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 4, 2018)

Before WILSON, WILLIAM PRYOR and JULIE CARNES, Circuit Judges.

PER CURIAM:

David Raphael Concepcion, who conditionally pleaded guilty to possessing with intent to distribute a controlled substance, 21 U.S.C. § 841(a)(1), and to possessing a firearm in furtherance of drug trafficking, 18 U.S.C. § 924(c)(2)(A)(i), appeals the denial of his motion to suppress. Concepcion argues that officers unlawfully entered and searched his girlfriend's apartment without a warrant in violation of the Fourth Amendment and that illegal entry and search tainted evidence the officers later seized based on a search warrant. We affirm.

Detective Roberto DeMoya of the City of Opa Locka saw Concepcion leave an apartment building carrying plastic bags of marijuana and walk across the street. DeMoya radioed Officer Hugo Alvarado and other officers in the area to intercept Concepcion. When Alvarado approached Concepcion and other men who had gathered on the street, the group fled in different directions and left packages of marijuana lying on the ground. Alvarado chased Concepcion back to the apartment building. DeMoya observed Concepcion enter the back door of an apartment. The detective unsheathed his crowbar, wedged it into the back door, and attempted to break its lock until he received a radio message that officers had apprehended Concepcion as he left through the front door of the apartment.

DeMoya confirmed that officers had arrested Concepcion and returned to the back door of the apartment to retrieve his crowbar. As the detective extracted the tool from the doorframe, Conception's girlfriend, Onneta Sweeting, opened the

2

door, and DeMoya immediately detected the odor of marijuana. Sweeting was crying, appeared nervous and scared, and stated, "They just ran up in here." The detective and several officers who were standing nearby entered Sweeting's apartment. The officers observed a bag of marijuana on a table in the living room, a digital scale inside an open box that was lying on top of a dresser in the bedroom, and large capacity ammunition magazines protruding from a dresser drawer. DeMoya arrested Sweeting and instructed other officers to secure the apartment until he could return with a search warrant.

Officers put Concepcion and Sweeting in the back seat of a patrol vehicle. Unbeknownst to the couple, an audio device recorded their conversation about drugs in Sweeting's apartment and how they should dispose of a specific firearm. When DeMoya executed the search warrant, he discovered the firearm that Concepcion and Sweeting had discussed and two other firearms, a large amount of marijuana, items used to package narcotics, cash, and more than 100 rounds of ammunition. Concepcion claimed ownership of the ammunition and narcotics. Sweeting told officers that Concepcion used her keys to access her apartment, that he used her apartment during the day, and that he stayed overnight with her about one time a week.

We apply a mixed standard of review to the denial of a motion to suppress. We review legal rulings *de novo* and related findings of fact for clear error. *United*

*States v. McCullough*, 851 F.3d 1194, 1199 (11th Cir.), *cert. denied*, 137 S. Ct. 2173 (2017). We consider the evidence in the light most favorable to the prevailing party. *Id.*

The district court did not err by denying Concepcion's motion to suppress the drugs, firearms, and ammunition discovered in Sweeting's apartment. DeMoya was in hot pursuit of Concepcion when he attempted to force his way into Sweeting's apartment. *See United States v. Santana*, 427 U.S. 38, 42-43 (1976). Even if, as Concepcion argues, he was perceived as a misdemeanant instead of a felon, the detective could enter Sweeting's apartment to pursue Concepcion. *See Stanton v. Sims*, 571 U.S. 3, 9 (2013). And DeMoya was entitled to enter the apartment after Concepcion's arrest to ensure the safety of Sweeting and of fellow officers. The detective reasonably deduced from Sweeting's demeanor and her use of the pronoun "they" that another man had entered and could still be hiding inside her apartment. *See United States v. Williams*, 871 F.3d 1197, 1201 (11th Cir. 2017) ("To protect their safety while making, and after, an arrest, law enforcement officers may also perform a 'protective sweep' of the residence."); *United States v. Tobin*, 923 F.2d 1506, 1510 (11th Cir. 1991) ("A warrantless search is allowed, however, where both probable cause and exigent circumstances exist."). Inside the apartment, DeMoya saw marijuana, a scale, and magazines of ammunition in plain view and later photographed the evidence. *See United States v. Folk*, 754 F.3d 905,

911 (11th Cir. 2014). The detective was allowed to use his observations to request a warrant to search Sweeting's apartment. *See Williams*, 871 F.3d at 1202.

Concepcion argues that the inculpatory evidence should have been suppressed because DeMoya retrieved a camera from his vehicle before entering Sweeting's apartment and his delay extinguished the exigency that justified the protective sweep, but the district court did not clearly err in finding that DeMoya promptly searched the apartment. The district court was entitled to credit DeMoya's testimony that he entered Sweeney's apartment immediately after she remarked, "they just ran up in here." *See United States v. Holt*, 777 F.3d 1234, 1255–56 (11th Cir. 2015) ("We accept the factfinder's choice of whom to believe" unless its "understanding of the facts is 'unbelievable.'"). The district court also reasonably found that DeMoya completed the protective sweep before he obtained his camera and photographed the apartment. Metadata that Concepcion's forensic expert collected from DeMoya's camera established that he took 14 photographs of Sweeting's apartment between 5:57 p.m. and 6:02 p.m. and that his first photograph depicted a case file lying on a table next to a bag of marijuana. And DeMoya testified that the case file depicted in the photograph belonged to him. From that evidence, the district court reasonably could have inferred that the speed of DeMoya's photo-taking revealed he was cataloging the evidence he had observed during his protective sweep and that he must have left his case file on the

5

table during his earlier foray into the apartment. S*ee McCullough*, 851 F.3d at 1199. We cannot say that the district court clearly erred in reconstructing the sequence of events.

Concepcion also argues that the warrant used to search Sweeting's apartment was invalid because the number of DeMoya's photographs establish that he conducted a "full search" of the apartment and then used his unlawful observations to obtain the warrant, but the district court did not clearly err in finding that the "extra time [the detective] spent in the apartment . . . [did] not affect the validity of the search warrant" because "all the items that served as the basis for the search warrant were in plain view and were observed during the initial protective sweep." Consistent with DeMoya's testimony about what items he saw during the protective sweep, his photographs showed a bag of marijuana lying on Sweeting's dining room table, a scale in a box sitting on a dresser, and magazines of ammunition protruding from the dresser. Based on the photographs, the district court reasonably found that "[t]here was no evidence that the officers opened drawers of dressers or looked in kitchen cabinets or took any other actions which would have exceeded the scope of a protective sweep." The items that DeMoya observed in plain view provided probable cause to obtain a warrant to search Sweeting's apartment. *See Williams*, 871 F.3d at 1202.

We **AFFIRM** Concepcion's convictions and sentence.